**GOOD HOPE MISSIONARY BAPTIST CHURCH, Plaintiff/Appellant,**

v.

**ST. LOUIS ALARM MONITOR-ING COMPANY, INC., De-fendant/Respondent.**

**No. ED 92566.**

Missouri Court of Appeals, Eastern District, Division One.

March 16, 2010.

Robert W. Cockerham, Samuel John Vincent III, Brown & James, P.C., St. Louis, MO, for appellant.

Ted L. Perryman, Thomas G. Wilmowski, Jr., Roberts, Perryman, Bomkamp & Meives, P.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE,
Presiding Judge.

This dispute involves a settlement agreement arising out of a lawsuit in which Good Hope Missionary Baptist Church, (Good Hope) sought damages from St. Louis Alarm Monitoring Company, Inc., (SLAM) after a fire damaged its premises. A high-low settlement agreement was put on the record before the trial court received the jury's verdict.[1] Both parties filed motions to enforce this agreement. The parties disputed whether the agreement included prejudgment interest, and each alleged a restriction on their respective counsel's authority to settle. The trial court entered a judgment on the pleadings, in which it granted SLAM's motion to enforce settlement, concluding that the settlement did not include prejudgment interest. Good Hope appeals. We reverse and remand because Good Hope's responsive motion alleged facts that must be taken as true and that precluded the entry of judgment on the pleadings in SLAM's favor as a matter of law.

Because this is an appeal from a judgment on the pleadings, we focus only on the pleadings. Approximately two weeks after the trial ended, SLAM filed a motion to enforce settlement. SLAM's motion alleged that the parties had negotiated a high-low settlement agreement after a week-long trial, but before the court received the jury's verdict. It alleged its

interpretation of the terms of the settlement agreement, that the agreement was put on the record, and that the jury returned a verdict in the amount of $1,000,000. It further alleged that prior to the court's acceptance of the jury's verdict, neither Good Hope's counsel nor SLAM's counsel represented that the settlement agreement would include prejudgment interest or that prejudgment interest would be paid on the amount of the verdict as part of the settlement agreement. It alleged that both counsel and both parties discussed the issue of prejudgment interest in great detail during settlement negotiations and that SLAM continually disputed that Good Hope was entitled to prejudgment interest. It requested that the settlement be enforced in the amount of the $1,000,000 verdict. SLAM attached to its motion a typewritten transcription of the agreement, a copy of the verdict, and counsel's affidavit attesting that he had negotiated the agreement with Good Hope's counsel, had never agreed to prejudgment interest, and had not discussed prejudgment interest with Good Hope's counsel between the time the jury announced it had reached a verdict and the trial court received it. He also attested to his lack of authority to enter into a settlement agreement that included prejudgment interest.

After SLAM filed its motion, the trial court entered judgment in Good Hope's

---

1. The agreement that is the subject of the dispute appears verbatim in the transcript filed in the record on appeal as follows:

MR. PLEGGE: The parties I believe have reached a settlement, high low settlement agreement, that the numbers of five hundred thousand, one million three hundred sixty thousand. And we have had an agreement that if the verdict comes out for one three six or above-any verdict between five hundred thousand and one million three hundred and sixty thousand, that amount of the verdict will be paid. Any verdict of five hundred thou-

sand or less will be five hundred thousand will be paid. And that will conclude all claims with regard to all parties. So on, so forth, each side to bare their own costs. I'm not paying for your costs.

THE COURT: Correct, Mr. Cockerham? Is that the agreement?
MR. COCKERMAN: That sounds like we're in.
THE COURT: We ready to accept the verdict of this jury?
MR. COCKERMAN: Yes.

favor in the amounts of $1,000,000 on the jury verdict and $360,000 as prejudgment interest.

Thereafter, Good Hope responded to SLAM's motion with its "Plaintiffs Motion to Enforce Settlement Agreement and Response in Opposition to Defendant's Motion to Enforce Settlement." In the 42 paragraph Statement of Facts in this document, Good Hope alleged that throughout the trial, counsel for the parties took part in settlement negotiations; the subject of prejudgment interest was continuously discussed and was an essential element in those negotiations; before settlement was reached, the trial court ruled it would enter prejudgment interest in favor of Good Hope if a verdict was returned in Good Hope's favor; that settlement negotiations continued on the basis that prejudgment interest would apply to, and be part of, any settlement; that SLAM had offered to settle the case for $1,360,000, which was the amount of SLAM's insurance policy ($1,000,000), plus prejudgment interest ($360,000) on the $1,000,000 policy; that the parties discussed settlement further and asked for leave of court to hold the reading of the verdict so the parties could reach a settlement; that the parties agreed upon a high-low settlement agreement with the understanding that prejudgment interest would be applicable to the judgment; that the parties agreed that the judgment would include prejudgment interest and there were no discussions or agreements to the contrary; that Good Hope's counsel was only authorized to enter into a settlement agreement that included prejudgment interest on the verdict; that the $1,360,000 "high" in the settlement agreement was based on the $1,000,000 amount of SLAM's insurance policy covering the loss plus prejudgment interest on $1,000,000; and that the jury returned a verdict in Good Hope's favor in an amount of $1,000,000. Good Hope contended that the parties' settlement agreement included prejudgment interest on the amount of the verdict, and requested that the settlement agreement be enforced in the amount of $1,360,000. Good Hope attached to its motion its attorneys' and client representatives' affidavits attesting to Good Hope's limitation on its counsels' authority to settle, the conversations with SLAM, and other circumstances leading up to the settlement; correspondence between the parties' attorneys; a typewritten transcription of portions of the trial court record in which prejudgment interest was discussed and the trial court ruled it would be applicable; and a typewritten transcription of the settlement agreement.

The trial court heard argument on these motions and on SLAM's separate motion to set aside the trial court's judgment in the amount of $1,360,000.00. The trial court subsequently entered a judgment that (1) granted SLAM's motion to enforce settlement based on its determination as a matter of law that (a) the parties had entered into a binding and enforceable settlement agreement, (b) the amount of the settlement was $1,000,000 based on the jury's verdict in that amount, and (c) the settlement did not include prejudgment interest; (2) declared SLAM was entitled to judgment on the pleadings pursuant to Rule 55.27(b); (3) denied Good Hope's request for an evidentiary hearing; and (4) dismissed Good Hope's cause of action with prejudice. Good Hope appeals from this judgment.

## DISCUSSION

In its two points on appeal, Good Hope asserts that the trial court erred in entering judgment on the pleadings, granting SLAM's motion to enforce settlement, and in dismissing Good Hope's cause of action,

because (1) the pleadings and attachments raised material issues of fact with respect to Good Hope's defense of lack of authority; and (2) the pleadings and attachments demonstrate either (a) the parties' agreement that SLAM would pay prejudgment interest on the verdict, or (b) an ambiguity in the settlement agreement; or (3) the agreement's terms and relevant extrinsic evidence permit only an interpretation of the agreement that includes prejudgment interest.

 There is no specific process in Missouri for enforcing an agreement settling a pending case. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). Settlement may be raised as an affirmative defense or, as here, by a motion to enforce the settlement agreement. *Id.* "A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement." *Id.* The moving party must prove the existence of the agreement by clear, convincing, and satisfactory evidence. *Id.*

 When presented with a motion to enforce settlement, the trial court may take one of three avenues: (1) it may hold an evidentiary hearing on the motion to determine the disputed facts and then enter judgment after taking evidence to prove the agreement and any defenses the non-moving party may proffer; (2) it may dispose of the motion on the pleadings pursuant to Rule 55.27; or (3) it may treat the motion as akin to that for summary judgment pursuant to Rule 74.04. *Id.* Of these three avenues, the most desirable approach "by far" is for the trial court to hold an evidentiary hearing in which the moving party proves the agreement, and the non-moving party can present evidence of its defenses. *Id.*

In this case, the trial court entered judgment on the pleadings.[2] A motion for judgment on the pleadings is authorized by Rule 55.27(b), which provides:

**(b) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 74.04.

 This motion is of common law origin, and it is not favored by the courts. *McIntosh v. Foulke*, 360 Mo. 481, 228 S.W.2d 757, 761 (1950). "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.'" *Eaton*, 224 S.W.3d at 599 (quoting *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo.App.2003)). Judgment on the pleadings is only appropriate when the question before the court is strictly one of law. *Eaton*, 224 S.W.3d at 599. A trial court should not grant a motion for judgment on the pleadings if a material issue of fact exists. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 345 (Mo. banc 1981). Such a motion may be sustained only when, " 'under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced. In other words, it cannot be sustained unless, under the admitted facts the moving party is entitled to judgment, without regard to what the findings might be on the facts

---

**2.** The record does not reflect that either party moved for judgment on the pleadings.

upon which issue is joined.'" *McIntosh,* 228 S.W.2d at 761 (quoting 41 Am.Jur.Pleading, section 336, p. 521).

■ The party that moves for judgment on the pleadings admits, for purposes of the motion, the truth of all well-pleaded facts in the opposing party's pleadings. *Eaton,* 224 S.W.3d at 599; *State ex rel Nixon v. American Tobacco Co.,* 34 S.W.3d 122, 134 (Mo. banc 2000). *See also Madison Block Pharmacy,* 620 S.W.2d at 345. However, the movant does not admit the pleader's conclusions or construction of the subject matter. *Hunter v. Delta Realty Co.,* 350 Mo. 1123, 169 S.W.2d 936, 938 (1943); *Grove v. Sutliffe,* 916 S.W.2d 825, 828 (Mo.App.1995); *Helmkamp v. American Family Mutual Insurance Co.,* 407 S.W.2d 559, 565–66 (Mo.App.1966).

■ Under Rule 55.27(b), a plaintiff[3] may make and prevail on a motion for judgment on the pleadings when the defending party has admitted the plaintiff's material facts; those facts entitle the plaintiff to judgment as a matter of law; and the defending party has not asserted any additional facts by way of defense. *Stephens v. Brekke,* 977 S.W.2d 87, 93 (Mo.App.1998); *Tuft v. City of St. Louis,* 936 S.W.2d 113, 115 (Mo.App.1996). However, if the defending party's pleading denies the plaintiff's allegations on material issues, or has asserted additional facts by way of defense, it is error for the trial court to enter judgment on the pleadings. *Garr v. Missouri Bd. of Probation and Parole,* 211 S.W.3d 191, 192–93 (Mo.App. 2007); *Armstrong v. Cape Girardeau Physician,* 49 S.W.3d 821, 826 (Mo.App.2001).

■ Lack of authority to make a settlement offer in a specific amount or to accept a settlement offer is a defense to a motion to compel settlement. *Eaton,* 224 S.W.3d at 600; *Leffler v. Bi–State Development Agency,* 612 S.W.2d 835, 836 (Mo. App.1981). It is a factual issue that requires a hearing for resolution. *Eaton,* 224 S.W.3d at 599. *See e.g., Leffler,* 612 S.W.2d at 836, in which the trial court decided the issue after a hearing.

■ In addition, even if a term, phrase, or entire contract is unambiguous, some extrinsic evidence may be used to interpret, rather than construe, the contract or its terms. *Monsanto v. Syngenta Seeds, Inc.,* 226 S.W.3d 227, 232–33 (Mo. App.2007). *See also Cure v. City of Jefferson,* 380 S.W.2d 305, 310–11 (Mo.1964); *Fiegener v. Freeman–Oak Hill Health Sys.,* 996 S.W.2d 767, 772 (Mo.App.1999); *Phipps v. School Dist. of Kansas City,* 645 S.W.2d 91, 100–01 (Mo.App.1982); *Spychalski v. MFA Life Ins. Co.,* 620 S.W.2d 388, 394–95 (Mo.App.1981); *Harris v. Union Elec. Co.,* 622 S.W.2d 239, 247 (Mo. App.1981). *See also* 5 MARGARET N. KNIFFIN, CORBIN ON CONTRACTS, § 24.3 (1998); RESTATEMENT (SECOND) OF CONTRACTS §§ 200, 202 (1981). As explained in *Spychalski:*

> Where the principals to a negotiated contract dispute the effect of the agreement, a court—quite apart from ambiguity or nonambiguity—is entitled to look at more than only the words of undertaking. The situation of the principals and the context of the transaction are relevant to interpret the prevalent meaning of the words used for contract. *Cure v. City of Jefferson,* 380 S.W.2d 305, 309 [1, 2] (Mo.1964); Restatement (Second) of Contracts 2d §§ 226–228 (Tent. Drafts Nos. 1–7, 1973). That evidence does not vary written terms of contract but only aids to discern the

---

**3.** We use "plaintiff" to include the party seeking affirmative relief in the underlying case, no matter how denominated in the trial court.

prevalent sense of the terms and, hence, the reasonable expectations of the principals. *Foley Co. v. Walnut Associates,* 597 S.W.2d 685, 689[7] (Mo.App.1980); 3 Corbin on Contracts §§ 542–545, 35 et seq. (1960).

620 S.W.2d at 394. Thus, a trial court can hear evidence relating to the context and circumstances of a contract in order to interpret the words of the contract. Once the contract is so interpreted, then the issue is whether it is ambiguous and requires extrinsic evidence for construction. *Monsanto,* 226 S.W.3d at 233. *See also Cure,* 380 S.W.2d at 312.

██ Under the above principles, evidence of the context and circumstances in which a settlement agreement is reached is admissible as an aid to interpretation at a hearing or trial in proceedings to enforce a settlement agreement. *See Fiegener,* 996 S.W.2d at 772; *Press Machinery Corp. v. Smith R.P.M. Corp.,* 727 F.2d 781, 784–85 (8th Cir.1984) (applying Missouri law).

In *Fiegener,* the court held that the following extrinsic evidence was admissible for the purpose of interpreting the high-low settlement agreement before it in order to show the context and circumstances in which the agreement was made: The point at which a settlement was announced during the trial; the presence of client representatives at trial; the parties' and the attorneys' knowledge of insurance coverage limits; unsuccessful prior attempts to settle; the jury's request to view certain exhibits just prior to the plaintiffs' counsel's joint high-low proposal to the defendants' counsel; the presentation of the proposal to the clients; and the subsequent conversations among and between the clients and their counsel prior to putting the agreement on the record. The appellate court then read the language used by counsel in the context of the above circumstances and determined it was not ambiguous. 996 S.W.2d at 772.

In *Press Machinery,* the defendant appealed from a judgment that construed a settlement agreement between it and the plaintiff resolving a restrictive covenant and trade secret case four days before trial. The underlying lawsuit was triggered by the plaintiff's hiring of the defendant's former employees and performing work for the Kansas City Star. The issue was whether the settlement agreement gave these parties a limited license with respect to the completion of their Kansas City Star contract. The trial court interpreted the settlement agreement by looking at "the circumstances surrounding the Kansas City Star contract, the actions of [the defendant] in regard to the Kansas City Star, and the intent of the parties as to that contract in their negotiations and execution of the settlement agreement...." *Id.* at 785. On appeal, the defendant argued that the trial court erred in considering the surrounding circumstances and the defendant's actions when it interpreted the unambiguous settlement agreement. The court of appeals held:

> According to Missouri law, the court's role is to determine the intention as manifested not by what the parties now say they intended but by the document. In that inquiry, however, the court is justified in considering more than the mere words of the contract. The surrounding circumstances at the time of contracting and the positions and actions of the parties are relevant to the judicial interpretation of the contract.

*Id.* (citing *Cure,* 380 S.W.2d at 310–11; Restatement (Second) Of Contracts §§ 202, 230, 235 (1981); *Phipps,* 645 S.W.2d at 100; *Harris,* 622 S.W.2d at 246–47; *Spychalski,* 620 S.W.2d at 394). The appellate court found the settlement agreement to be unambiguous and that "[t]he trial court's consideration of the circumstances surrounding the Kansas City

Star contract and the negotiations of the settlement agreement was used appropriately to determine the intent of the parties and was not used to vary the written terms of the agreement." *Id.*

Although no motion for judgment on the pleadings was filed in this case,[4] for purposes of this analysis, Good Hope is in the position of the "non-movant" because the judgment on the pleadings is in SLAM's favor. Accordingly, in considering whether to enter judgment on the pleadings, the trial court was required to treat all well-pleaded facts in Good Hope's pleading as true.

Good Hope alleged facts asserting a defense of a restriction on its authority to settle, and facts setting out the context and the circumstances of the settlement agreement, which facts disputed many facts alleged in SLAM's motion. These allegations precluded the entry of judgment on the pleadings against Good Hope and did not demonstrate that SLAM was entitled to judgment as a matter of law. Good Hope's allegations required that the motion to enforce settlement be resolved after a hearing, rather than by judgment on the pleadings. The trial court should have conducted a hearing to resolve the parties' factual disputes and make credibility determinations before it determined the legal issues. *See Eaton,* 224 S.W.3d at 601.

In sum, we do not reach the merits of the questions raised in this appeal. Specifically, we are not deciding what the settlement agreement means or whether it was ambiguous or unambiguous. We are not deciding whether Good Hope is entitled to prevail on its lack of authority defense. We are only deciding that the entry of judgment on the pleadings was error because Good Hope's responsive motion alleged facts that must be taken as true and that precluded the entry of judgment on the pleadings in SLAM's favor as a matter of law.

*Conclusion*

The trial court erred in entering judgment on the pleadings. The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.[5]

CLIFFORD H. AHRENS, J. and NANNETTE A. BAKER, J., concur.

---

4. The issue of whether a trial court is authorized to enter judgment on the pleadings in the absence of a motion filed under Rule 55.27(b) is not raised in this appeal.

5. On remand, the trial court also needs to resolve what the exact language of the settlement agreement is. The parties each attached to their motions the same typewritten page, certified by the court reporter, purporting to contain the agreement. However, the transcript on appeal, also certified by the court reporter, had some variations in the language of the settlement agreement from what appeared in the typewritten page considered in the trial court.