

# Missouri Court of Appeals

### Southern District

### Division Two

DALE FRAZIER,                      )

                            )

       Movant-Appellant,       )

                            )

    vs.                       )     No. SD35430

                            )     Filed:  May 21, 2019

STATE OF MISSOURI,       )

                            )

       Respondent-Respondent.  )

### APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

### Honorable W. Keith Currie, Judge

## AFFIRMED

Dale Frazier ("Frazier") appeals from the judgment of the motion court denying his amended Rule 24.035[1] motion to set aside his two convictions for statutory sodomy in the second degree.  In two points on appeal, Frazier asserts that:  (1) the motion court erred in denying his motion because his "sentence is illegal in that his parole is conditioned on an admission of guilt . . . even though he entered an *Alford*[2] plea"; and (2) plea counsel was ineffective for advising Frazier

---

[1] All rule references are to Missouri Court Rules (2019).

[2] An *Alford* plea allows a defendant to plead guilty to the charged crime and accept criminal penalty even if he is unwilling or unable to admit he committed the acts constituting the crime.  ***North Carolina v. Alford***, 400 U.S. 25, 37 (1970).

to enter *Alford* pleas because Frazier must admit guilt as a prerequisite for parole. Because the motion court's denial of Frazier's amended Rule 24.035 motion, following an evidentiary hearing, was not clearly erroneous, we affirm.

**Facts and Procedural Background**

In reciting the facts of this matter, our treatment of the evidence is in accord with the principle that we defer to the motion court's credibility determinations and view the evidence in the light most favorable to the motion court's judgment. *Hewitt v. State*, 559 S.W.3d 390, 392 (Mo.App. S.D. 2018). We recite other evidence not encompassed by this standard as necessary for context.

Frazier was charged by information with two counts of the class C felony of statutory sodomy in the first degree. He entered into an *Alford* plea agreement with the State whereby the State would reduce both counts to statutory sodomy in the second degree.

A plea hearing was held on August 26, 2014. Frazier advised the trial court that it was his decision to enter *Alford* pleas, and he had discussed the plea with his attorney. The following colloquy then took place:

> THE COURT: Now, Mr. Frazier, have you spoken with your attorney about what an Alford plea is?
>
> [FRAZIER]: Yes, sir.
>
> THE COURT: Let me explain to you what I understand an Alford plea to be, because I want to make sure that you and I are talking about the same thing.
>
> Now, it's called an Alford plea because it's named after a case that involved a gentleman, I believe it was a gentleman from the state of North Carolina, he was charged with some type of felony offense in North Carolina, and, he ended up entering what we refer to as an Alford plea. And that case went all the way to the United States Supreme Court. And, in that case the Supreme Court recognized a plea by which the defendant in entering his plea was not necessarily admitting his guilt to the offense, or the offenses that he was pleading to, but he was telling the

2

Court by entering his plea that his understanding of the evidence that would be presented against him at trial was such that if he were to go to trial, there would be a very real possibility that he would be found guilty and convicted, and the defendant believed it was in his best interest in [sic] enter what we now refer to as an Alford plea.

Now, do you understand kind of what I just told you I understand an Alford plea to be?

[FRAZIER]: Yes, sir.

THE COURT: And, is that basically the same type of plea that you want to enter before the Court here today?

THE DEFENDANT: Yes, sir.

Frazier indicated his understanding that the term of punishment on each count was up to a year in the county jail or a term in the Department of Corrections ("DOC"), not to exceed seven years; that he did not have to enter *Alford* pleas, but could instead proceed to trial; understood his rights attendant to a jury trial; he was satisfied with counsel's representation; and that counsel had done what Frazier asked.

Frazier confirmed he understood the charges against him as recited by the trial court; believed it was in his best interest to enter the *Alford* pleas; and was entering the *Alford* pleas of his own free will. The evidence against Frazier was recited, Frazier indicated he understood the evidence, and that this understanding was the basis for his *Alford* pleas.

Pursuant to the *Alford* plea agreement, the State recommend a five-year sentence on each count, with the sentences to run consecutively, and Frazier would receive a suspended execution of those sentences and five years of supervised probation. Frazier confirmed he understood this sentencing recommendation. He affirmed his understanding that if the trial court accepted his plea and "[made] a finding of [his] guilt" as to the two charges and placed him on probation, he would be supervised by the Board of Probation and Parole as a sex offender, and "subject to certain

3

requirements as a sex offender, such as registration and things of that nature." Frazier confirmed he was asking the trial court to accept his plea "pursuant to the Alford case" on the two separate counts of statutory sodomy in the second degree, and follow the State's sentencing recommendation.

The trial court accepted Frazier's *Alford* pleas, made "a finding of [Frazier]'s guilt as to each of the two separate counts of statutory sodomy in the second degree, and sentenced Frazier pursuant to the State's recommendation.

On October 27, 2015, a probation revocation hearing was held. Frazier waived his right to a formal hearing, and admitted to violating his probation. The trial court announced that Frazier had previously "pled guilty to the two amended counts of statutory sodomy" and was given probation, but was in violation of that probation because he went to Arkansas without notifying his probation officer, and "actually committed a new offense of possession of a controlled substance" while there. The court then revoked Frazier's probation and ordered execution of his sentences.

Frazier again confirmed that he was satisfied with plea counsel's representation, that plea counsel had done what he asked, and that he had ample opportunity to discuss his case with plea counsel. The court found no probable cause existed that Frazier received ineffective assistance of counsel. Frazier was delivered to the DOC on October 30, 2015.

On June 5, 2017, Frazier timely filed an amended Rule 24.035 motion.[3] In the motion, Frazier asserted, in relevant part, that: (1) plea counsel was ineffective for advising him to enter

---

[3] We have independently verified the timeliness of Frazier's amended motion, as required by *Moore v. State*, 458 S.W.3d 822, 825 (Mo. banc 2015). Frazier filed his timely *pro se* Rule 24.035 on April 25, 2016. Counsel was appointed on May 2, 2016. Counsel filed an entry of appearance on May 18, 2016. The transcript was filed on March 6, 2017. Counsel was granted a 30-day extension of time in which to file the amended motion, which was timely filed June 5, 2017.

an *Alford* plea where the terms of his probation included the completion of the Missouri Sex Offender Program ("MOSOP"), which would require an admission of guilt to the facts constituting the offenses; and (2) that his sentence was illegal because MOSOP conditioned parole on Frazier's admission of guilt, thereby depriving him of his right to free speech and his right against self-incrimination.

At the evidentiary hearing on September 6, 2017, plea counsel testified he explained to Frazier what an *Alford* plea was, and recommended he take the plea. Plea Counsel further explained to Frazier that if his probation was revoked, Frazier would have to complete the MOSOP, and would "have to admit his guilt to the underlying criminal charges" to complete MOSOP. Plea counsel testified that the charges put Frazier in a "tough spot" since Frazier was looking at a life sentence on each of the initial charges (statutory sodomy in the first degree), but indicated that Frazier made the decision to enter *Alford* pleas (for statutory sodomy in the second degree) and accept probation.

Frazier testified he had prior convictions for "anywhere from six to maybe eight prior drug offenses," "a third degree assault one time," and "a [failure to pay] child support." He admitted that he had been on probation before (and violated such probation), and knew that if he violated probation this time, he would go to prison. Frazier admitted that plea counsel had explained an *Alford* plea, and admitted that at the time of his plea, the trial court also explained an *Alford* plea. Frazier testified that if he had understood he had to complete MOSOP to be eligible for parole, he would not have taken the *Alford* plea, but instead "would have waited and seen if they would offer a better deal or maybe took it to trial."

On January 25, 2018, the motion court issued findings of fact and conclusions of law, rejecting Frazier's amended Rule 24.035 motion. The motion court found that Frazier had been

clearly advised of the nature of an *Alford* plea and the consequences thereof. The motion court also found that Frazier affirmed he understood the meaning of an *Alford* plea, it was the type of plea he wished to enter, it was in his best interest to so plead, and he was entering the plea of his own free will.

The motion court noted Frazier's argument that he would be required to admit guilt to complete the MOSOP program, pursuant to section 589.040.[4] The motion court rejected this argument, reasoning that no statute or court order required Frazier to "admit guilt to the facts of the underlying charge"; that the trial court was not required to list every rule regulation or statute that would control when the DOC released inmates; and parole or conditional release was not a constitutional right.

The motion court further found that plea counsel had not failed to do anything that affected Frazier's rights or prejudiced him; and Frazier failed to establish that but for any claimed error on the part of plea counsel, he would not have entered *Alford* pleas and would have insisted on going to trial. This appeal followed.

In two points on appeal, Frazier asserts the motion court clearly erred in denying his amended Rule 24.035 motion in that "his sentence is illegal because his parole is conditioned on an admission of guilt of the underlying offenses even though he entered an *Alford* plea;" and "plea counsel was ineffective for advising [] Frazier to enter *Alford* pleas despite knowing that he would have to admit guilt as a prerequisite for parole[.]"

---

[4] The motion court, in its findings, purported to quote "Section **489**.040.2." This appears to reflect a typographical error—section **589**.040.2 is the correct statute, and states in relevant part:

> All persons imprisoned by the department of corrections for sexual assault offenses shall be required to successfully complete the programs developed pursuant to subsection 1 of this section prior to being eligible for parole or conditional release.

All references to statutes are to RSMo 2000, unless otherwise indicated.

## Standard of Review

This Court's review of a motion court's ruling on a Rule 24.035 motion for postconviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. A motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made.

*Latham v. State*, 554 S.W.3d 397, 401 (Mo. banc 2018) (internal quotations and citations omitted).

To be entitled to postconviction relief due to ineffective assistance of counsel, a movant must demonstrate that: (1) defense counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure. . . . The prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. This requires the movant to show, but for the errors of counsel, ***he would <u>not</u> have pleaded guilty, and he would have <u>insisted</u> on a trial***.

*Ryan v. State*, 547 S.W.3d 151, 154 (Mo. banc 2018) (internal quotations and citations omitted) (emphasis added).

## Analysis

### *Point I: Legality of Frazier's Sentences*

Frazier argues that the motion court clearly erred in denying his amended Rule 24.035 motion in that "his sentence is illegal because his parole is conditioned on an admission of guilt of the underlying offenses even though he entered an *Alford* plea."[5]

---

[5] The sufficiency of the evidence supporting Frazier's suggestion (necessary predicate to both his points in this appeal, and dispersed with gusto throughout both arguments) that he ***must*** admit guilt to the facts underlying his convictions in order to comply with MOSOP's requirements is questionable based on the record before us. The record reflects that plea counsel testified at the motion hearing that he ***told*** Frazier "that in order to complete MOSOP, he would have to admit his guilt to the underlying criminal charges"—while this is certainly evidence of ***what plea counsel told Frazier***, it is a stretch to say that this is evidence of MOSOP's requirements (either now or at the time of Frazier's pleas). Frazier's brief directs us to the following passage from ***Spencer v. State***, 334 S.W.3d 559 (Mo.App. W.D. 2010): "[MOSOP] guidelines provide that successful completion of Phase I is dependent upon the offender's acknowledgement and admittance of their sexual offense and a willingness to work toward personal change." ***Id.*** at 563 (internal quotation and citation omitted). For its part, the Western District took something of an *arguendo* approach, merely recounting that appellant "***allege[d]*** that the Board of Probation and Parole uniformly requires sexual offenders to complete the MoSOP before being considered for conditional release under § 558.011, or being awarded good-time credit under § 558.041." ***Spencer***, 334 S.W.3d at 563 (emphasis added). Even if the Western District accepted the appellant's allegation as true, ***Spencer*** was issued close to nine years ago. While it is *possible* MOSOP policy was the same at the time of ***Spencer***, Frazier's pleas, and now, this court does not play oracle with idle

"[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty." *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). "An *Alford* plea allows a defendant to plead guilty to a charged offense and accept criminal penalty even if he or she is unwilling or unable to admit to committing the acts constituting the offense." *Brooks v. State*, 242 S.W.3d 705, 707 n.2 (Mo. banc 2008). Generally speaking (and as relevant here),[6] the *effect* of an accepted *Alford* plea is the same as that of any other guilty plea: "An *Alford* plea . . . stands on equal footing with one in which an accused specifically admits the commission of the particular acts charged." *Wilson v. State*, 813 S.W.2d 833, 843 (Mo. banc 1991) (internal quotation and citation omitted).[7]

Frazier argues that his sentence was illegal because (according to him) he must admit guilt to the facts underlying the two statutory sodomy convictions pursuant to MOSOP. We disagree.

"There is no constitutional or inherent right to early release from prison." *Rentschler v. Nixon*, 311 S.W.3d 783, 786 (Mo. banc 2010) (internal quotation and citation omitted). Furthermore, "[a] prisoner does not have a protectable expectation of parole by virtue of the mere existence of a parole system." *Miller v. Missouri Dept. of Corrections*, 436 S.W.3d 692, 699 (Mo.App. W.D. 2014) (internal quotation and citation omitted). While "a state's parole statute

---

possibilities. It was Frazier's burden to adduce and persuade the motion court to credit the evidence necessary to prove his claims, and to provide this Court with a record reflecting such evidence (as well as directing us to it in his brief) on appeal. *See Hall v. State*, 528 S.W.3d 360, 361 n.1 (Mo. banc 2017). Nevertheless, it is unnecessary to dispose of Frazier's appeal on this basis—for the reasons discussed more thoroughly elsewhere in this opinion, even if Frazier's allegation accurately reflected current MOSOP policy, his claim would be unavailing.

[6] We observe some references in the case law to possible exceptions to this principle, whereby differential treatment may exist between *Alford* pleas and other types of guilty pleas. *See, e.g.*, *Federhofer v. State*, 462 S.W.3d 838, 843 (Mo.App. E.D. 2015) (alluding to potential advantages and disadvantages of *Alford* pleas versus other guilty pleas in civil litigation). Nevertheless, such exceptions are inapplicable to the matters challenged in the instant appeal.

[7] *See O'Neal v. State*, 236 S.W.3d 91, 95 (Mo.App. E.D. 2007) ("In reviewing a motion for post-conviction relief filed pursuant to Rule 24.035, an *Alford* plea is not treated differently from a guilty plea.") (citation omitted).

may create a protected liberty interest in parole,"[8] as applicable here, the Missouri statutory scheme

governing parole creates no right, cognizable liberty interest, or protectable expectation as relevant

to Frazier's claim. *See Winfrey v. Missouri Board of Probation and Parole*, 521 S.W.3d 236,

240-41 (Mo.App. W.D. 2017).[9]

> Section 217.690[10] creates no justifiable expectation of release, giving the Board almost unlimited discretion in whether to grant parole release. Section 217.690.1 creates no protected liberty interest in parole release for due process purposes because the statute uses discretionary language, the board *may in its discretion* release or parole. Similarly, the regulations promulgated under the authority of section 217.690 do not create an interest in parole.

*Miller*, 436 S.W.3d at 699 (internal quotations and case citations omitted) (emphasis in original).

The DOC "has a statutory responsibility to rehabilitate imprisoned offenders *__serving__*

*__sentences__* for sexual offenses." *Reynolds v. Missouri Board of Probation and Parole*, 468 S.W.3d

413, 419 (Mo.App. W.D. 2015) (emphasis added). That statutory responsibility derives, in

relevant part, from section 589.040, which directs as follows:

> 1. The director of the department of corrections *__shall__* develop a program of treatment, education and rehabilitation for *__all imprisoned offenders__* who are *__serving sentences__* for *__sexual assault offenses__*. When developing such programs, the ultimate goal shall be the prevention of future sexual assaults by the participants in such programs, and the director shall utilize those concepts, services, programs, projects, facilities and other resources designed to achieve this goal.

---

[8] *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 134 (Mo. banc 1995). Even then, "[w]here the right exists only by state law, *it is not protected by substantive due process* and may constitutionally be rescinded so long as the elements of procedural due process are observed." *Rentschler*, 311 S.W.3d 783 at 786 (internal quotations and citations omitted) (emphasis in original).

[9] As *Winfrey* indicates, "[t]he plain language of [s]ection 217.690.4 clearly establishes that the Board [of Probation and Parole] has the authority to create eligibility requirements for parole." 521 S.W.3d at 240. Further, "[i]t is clear from [section 589.040] that sexual offenders must complete a program developed by the Director of the Missouri Department of Corrections[,]" to be eligible for parole. *Id.* at 241. *See also*, *State v. Cannafax*, 344 S.W.3d 279, 290-91 (Mo.App. S.D. 2011).

[10] Section 217.690 sets forth the general responsibilities and procedures for the Board of Probation and Parole.

2.  ***All persons imprisoned*** by the department of corrections for ***sexual assault offenses shall*** be ***required*** to successfully ***complete the programs developed pursuant to subsection 1 of this section prior to being eligible for parole or conditional release.***

(Emphasis added).

Our courts have observed that the "DOC developed the MoSOP to comply with section 589.040." ***Reynolds***, 468 S.W.3d at 419 (internal quotation and citation omitted); ***Spencer v. State***, 334 S.W.3d 559, 564 (Mo.App. W.D. 2010). "The Department of Corrections may require an offender to complete MOSOP as a condition of parole or conditional release. Further, the Department of Corrections has wide discretion in deciding on an inmate's appropriate assignments." ***Winfrey***, 521 S.W.3d at 243. "With the exceptions of . . . mandatory minimum sentences, . . . offenders can be paroled virtually any[]time during their sentence at the discretion of the Parole Board under conditions set by the Board." ***Cooper v. Holden***, 189 S.W.3d 614, 618 (Mo.App. W.D. 2006). "This also means that the Parole Board can deny parole to an offender throughout his or her entire sentence." ***Id.*** Simply put, Frazier demonstrates no right, cognizable liberty interest, or protectable expectation in parole as relevant to his claim.

For all of the reasons, Frazier fails to demonstrate that the motion court clearly erred in denying his amended Rule 24.035 motion on the basis of the alleged illegality of his sentences. Point I is denied.

### Point II:  Plea Counsel Was Not Ineffective

Frazier argues that the motion court clearly erred in denying his amended Rule 24.035 motion because "plea counsel was ineffective for advising [] Frazier to enter *Alford* pleas despite knowing that he would have to admit guilt as a prerequisite for parole[.]" Frazier suggests that "such affirmative misadvice prejudiced [] Frazier in that, had plea counsel not misadvised [] Frazier . . . [he] would not have pleaded guilty but would have instead insisted on going to trial."

We observe the following salient passages from the motion court's judgment, which guide and inform our review:

> [Frazier] asserts that his plea attorney . . . was ineffective for advising [Frazier] to enter an Alford Plea where the terms of his probation included the completion of Missouri Sex Offender Program (MOSOP) which would require an admission of guilt to the facts of the offenses. He asserts that as a result of plea counsel's ineffectiveness, his plea was unknowing and involuntary. However, the transcript of the plea establishes that [Frazier] was clearly advised of the nature of an Alford plea and the consequences of the same. The sentencing judge . . . explained the background and circumstances of an *Alford* Plea. [Frazier] stated that he understood the meaning of an Alford Plea and that same is the type of plea he wanted to enter before the Court. Thereafter, the plea Court went into significant detail as to the constitutional rights of [Frazier] and that by entering this *Alford* Plea of Guilty, he was giving up those rights. The Court read to [Frazier] the charges set forth in both Count I and Count II. In response to both, when the Court ask [Frazier] if that was the charge to which he wanted to enter an Alford Plea, he responded in the affirmative. When the Court further ask whether he was entering this Alford plea of his own free will, [Frazier] again responded in the affirmative. Finally, when the Court asked him if he was entering the Alford Plea because he believed it was in his best interest to do so, [Frazier] again responded in the affirmative.[11]
>
> . . . .
>
> Motion counsel asserts that the plea court attached a special condition that [Frazier] complete the MOSOP program. This is not correct. Motion counsel cites page 14 of the plea transcript as a basis for such assertion, but no such language exists on page 14 or anywhere else in the plea transcript.

(Citations to transcript omitted).

As our Supreme Court has indicated, "factual statements made by the defendant in the sentencing proceeding may later refute certain claims of ineffective assistance of counsel so long as the questions asked and the responses to them were specific enough to refute conclusively the movant's allegations." *Ryan*, 547 S.W.3d at 156 (internal quotations and citations omitted). The record reflects the following colloquy at Frazier's plea hearing:

---

[11] The motion court's recitation is supported by the record.

THE COURT: Are these plea-agreement cases, [prosecutor]?

[PROSECUTOR]: Yes. The State's agreed to recommend that the Defendant be sentenced to five years in the Department of Corrections in each count. That these sentences are to run consecutively. That the Court suspend execution of these sentences and place him on five years supervised probation. And as a condition of his probation, he have no contact with the victim in this case.

THE COURT: Mr. Frazier, you understand the prosecutor's recommendation?

[FRAZIER]: Yes, sir.

THE COURT: And, do you understand that *if the Court accepts these two Alford pleas* here today, and, *makes a finding of your guilt as to these two charges* and places you on probation, that *you will be supervised by the Board of Probation and Parole as a sex offender* --

[FRAZIER]: Yes, sir.

THE COURT: -- *subject to certain requirements as a sex offender,* such as registration and things of that nature?

[FRAZIER]: Yes, sir.

THE COURT: Now, Mr. Frazier, keeping all this in mind, are you asking the Court to accept your pleas pursuant to the Alford case to each of these two separate counts of statutory sodomy in the second degree here today, and to follow the prosecutor's recommendation?

[FRAZIER]: Yes, sir.

(Emphasis added).

This record is sufficient to demonstrate that Frazier was informed by the plea court that he would be subject to the requirements of a sex offender—he admitted he understood. Assuming *arguendo* that Frazier's claim is cognizable, it cannot succeed. Frazier cannot now claim that plea counsel was ineffective for misinforming or failing to inform him on these matters, where the plea court sufficiently advised him (and he admitted he understood) before accepting his plea. *Ryan*, 547 S.W.3d at 156

Furthermore, the motion court credited plea counsel's testimony that he discussed with Frazier the requirement that Frazier would need to admit guilt to complete MOSOP to be eligible for parole. We defer to the motion court's credibility determinations,[12] and this determination—unchallenged and unaddressed by Frazier—is fatal to his challenge.

Frazier's claim would also fail because the record does not demonstrate that "but for the errors of [plea] counsel, [Frazier] would ***not*** have pleaded guilty, and he would have ***insisted*** on a trial." ***Ryan***, 547 S.W.3d at 154 (internal quotation and citation omitted) (emphasis added). The sole evidence adduced at the post-conviction hearing on that requirement was as follows:

> [FRAZIER'S COUNSEL]:    If you had known at the time of your plea, that if you went to prison, in order to get parole you would have to admit your guilt, would you have still made an Alford plea there?
>
> [FRAZIER]:  No, sir.
>
> [FRAZIER'S COUNSEL]:  Would you have pled guilty that day at all?
>
> [FRAZIER]:  No, sir.
>
> [FRAZIER'S COUNSEL]:    What would you have done instead?
>
> [FRAZIER]:  I would have waited and seen if they would offer a better deal or ***maybe*** took it to trial.

(Emphasis added).

This evidence—comprising a purely speculative hope for a better plea offer, and a post-hoc vacillation that Frazier "maybe" would have taken the case to trial—is insufficient to support the prejudice requirement for ineffective assistance of plea counsel. Even if the trial court credited Frazier's testimony[13] that he "***maybe***" would have taken the case to trial, this does not transfigure

---

[12] *See **McFadden v. State***, 553 S.W.3d 289, 298 (Mo. banc 2018).

[13] It is not entirely clear from the record whether the motion court credited this particular testimony. However, we need not parse the issue at length as Frazier's claim would fail regardless of whether this testimony was credited or not.

into proof that Frazier "would have **insisted** on a trial," as post-conviction relief requires. *See*

***Ryan***, 547 S.W.3d at 154 (internal quotation and citation omitted) (emphasis added).

We also note that Frazier was under no obligation to seek or enter ***Alford*** pleas (or any manner of guilty plea). For that matter, the prosecutor was not obliged to consent to the ***Alford*** pleas, and the trial court was not required to accept them.[14] Rather, the credited evidence reflects that Frazier sought and entered the pleas based (reasonably) on his appreciation of his own best interests, to wit: (1) obtaining suspended execution of sentences for two convictions of statutory sodomy in the second degree, notwithstanding the fact that Frazier reported prior convictions for "six to maybe eight prior drug offenses," "a third degree assault one time" and a "[failure to pay] child support"; (2) Frazier's father was dying at the time these charges were pending, and Frazier wished to be free on probation to spend time with his father instead of being confined in prison; (3) Frazier did not wish to admit the facts underlying the charges at issue; and (4) the State agreed to reduce the charges from two counts of statutory sodomy in the first degree (for which the authorized sentence was "***life imprisonment*** or a term of years not less than five years[]"),[15] to two counts of statutory sodomy in the second degree (for which the authorized sentence was "a term of years not to exceed seven years[]").[16] (Emphasis added).

Frazier obtained these benefits in exchange for entering ***Alford*** pleas. However, at the October 27, 2015 probation revocation hearing, the trial court recited (and Frazier agreed) that Frazier violated the terms of his probation when he "went to the state of Arkansas without notifying

---

[14] *See* **State v. Banks**, 135 S.W.3d 497, 500 (Mo.App. W.D. 2004); *see also*, **State v. Williams**, 937 S.W.2d 330, 333-34 (Mo.App. E.D. 1996) ("the Supreme Court of the United States, in *Alford*, made it clear that a defendant has no constitutional right to have a guilty plea accepted, whether or not it is made pursuant to *Alford*.").

[15] Section 566.062, RSMo Cum.Supp. (2006) (emphasis added).

[16] Sections 558.011.1(3), RSMo Cum.Supp. (2003), and 566.064 (1994).

[his] probation officer," and that he "actually committed a new offense of possession of a controlled substance, in the state of Arkansas while on probation[.]"[17]  Frazier's probation was revoked, and his sentences were executed.  The terms of his parole eligibility are in accord with any other person convicted, sentenced, and imprisoned for two counts of statutory sodomy in the second degree.[18]

Frazier fails to demonstrate that the motion court clearly erred in denying his amended Rule 24.035 motion for post-conviction relief based on Frazier's allegation of ineffective assistance of counsel.  Point II is denied.

The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

DANIEL E. SCOTT, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS

---

[17] *See **Winfrey***, 521 S.W.3d at 241 ("[D]rug violations are not minor violations in the eyes of the law, particularly for someone who has been given the early opportunity for freedom[.]").

[18] As section 589.040.2 indicates, "[a]ll persons ***imprisoned*** by the department of corrections for sexual assault offenses shall be required to complete" MOSOP.  (Emphasis added).